IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLLIE JAMES TUNSTALL,    )
    )
    Petitioner,    )
    )    CIV. A. NO. 19-00240-WS
v.    )
    )    CRIM. A. NO. 17-0231-WS-MU-1
    UNITED STATES OF AMERICA,    )
    )
    Respondent.    )

## REPORT AND RECOMMENDATION

This cause is before the Court on Petitioner Willie James Tunstall's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 45), the United States' Response in Opposition to Tunstall's Motion Pursuant to 28 U.S.C. § 2255 (Doc. 56), Petitioner's Reply to Response (Doc. 60), Petitioner's "Supplemental" pleadings (Docs. 52 and 61), and the United States' Response to Tunstall's Reply and Supplemental Pleading in Support of his Motion Pursuant to 28 U.S.C. § 2255 (Doc. 64). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a)(2)(R). Having considered all relevant pleadings and proceedings and the applicable law, the undersigned recommends that Tunstall's § 2255 motion be **DENIED** without an evidentiary hearing. *See, e.g., Means v. Sec'y, Dep't of Corr.,* 433 F. App'x 852, 855 (11th Cir. 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied,* 565 U.S. 1217 (2012); *Allen v. Sec'y, Fla. Dep't of Corr.,* 611 F.3d 740, 745 (11th Cir.

2010) ("A district court is not required to hold an evidentiary hearing … 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied,* 563 U.S. 976 (2011).

## I. <u>FINDINGS OF FACT</u>

On October 26, 2017, Tunstall was charged in a federal indictment with five counts relating to possession with intent to distribute crack cocaine and cocaine and two counts of being a felon in possession of a firearm. (Doc. 1). On January 23, 2018, Tunstall, through his retained counsel, notified the Court of his intent to plead guilty to counts four (possession with intent to distribute crack cocaine) and six (felon in possession of a firearm) of the indictment. (Doc. 25). Tunstall and his attorney signed the plea agreement on January 25, 2018, and it was filed the following day. (Doc. 28).

Directly above his signature on the plea agreement, Tunstall acknowledged the following:

> I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

(Doc. 28 at p. 8). In the written plea agreement, Tunstall also acknowledged that he had the benefit of legal counsel in negotiating his plea agreement, that he had discussed the facts of the case with his attorney, that his attorney had explained the essential legal elements of the criminal charges that had been brought against him, and that his attorney had explained his understanding of the Government's evidence and the law as

it related to the facts of his case. (*Id*. at p. 2). He further agreed that he understood that the United States had the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt, that he and his attorney had discussed possible defenses to the charge, that he believed that his attorney had represented him faithfully, skillfully, and diligently, and that he was completely satisfied with the legal advice of his attorney. (*Id*.). He agreed in the plea agreement that the Factual Resume, which was incorporated into the plea agreement, was true, correct, and accurate in every respect. (*Id*. at pp. 2-3, 8). He further agreed that the plea of guilty was freely and voluntarily made, was not the result of force, threats, promises, or representations, apart from those representations set forth in the plea agreement, that there had been no promises from anyone as to the particular sentence the Court would impose, and that he was pleading guilty because he was guilty. (*Id*. at p. 3).

The plea agreement stated that the maximum penalty the Court could impose as to count four was 30 years' imprisonment, a fine not to exceed $2,000,000, a term of supervised release of six years, a mandatory assessment of $100, and forfeiture of property. (*Id*.). The plea agreement also stated that the maximum penalty the Court could impose as to count six was 10 years' imprisonment, a fine not to exceed $250,000, a term of supervised release of three years, a mandatory assessment of $100, and forfeiture of firearms. (*Id*. at p. 4). The plea agreement further stated that the Court would impose the sentence in this case, that the United States Sentencing Guidelines are advisory and do not bind the Court, that he had reviewed the application of the Guidelines with his attorney and understood that no one could predict with certainty what the sentencing range would be in the case until after a pre-sentence

investigation had been completed and the Court had ruled on the results of that investigation, that he understood that at sentencing, the Court may not necessarily sentence him in accordance with the Guidelines, that he understood that he would not be allowed to withdraw his guilty plea if the advisory guideline range was higher than expected, or if the Court departed or varied from the advisory guideline range, that he understood that this Plea Agreement did not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and that he fully understood that determination of the sentencing range or guideline level and the actual sentence imposed was solely the discretion of the Court. (*Id*. at pp. 4-5). Tunstall agreed that he would not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings, except he reserved the right to challenge his sentence on two specific grounds and the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion. (*Id*. at pp. 6-7).

Tunstall appeared before the Court for a guilty plea hearing, with his counsel, on January 25, 2018. After being placed under oath, Tunstall testified that he had received a copy of the indictment, that he had a full opportunity to read it and review it with his attorney, that he fully understood the charges contained in the indictment, that he had fully discussed the facts surrounding the charges against him with his attorney, and that he was fully satisfied with the representation he had received from his attorney. (Doc. 49 at pp. 7-8). Tunstall testified that he signed both his plea agreement and the factual resume, that he had an opportunity to read and review the plea agreement and the factual resume with his lawyer, that he fully understood the terms and conditions of the plea agreement and the factual resume, and that he agreed with it. (*Id*. at pp. 8-9). He

further testified that no one had made any promises to him or attempted in any way to force him to plead guilty or pressured him or threatened him in any way. (*Id*. at p. 9).

The Court advised Tunstall that the maximum possible penalty the Court could impose upon conviction of count four was a term of imprisonment up to 30 years, a fine not to exceed two million dollars, a supervised release term up to six years, a mandatory special assessment of $100, and forfeiture of property and, that for count six, he could receive a term of imprisonment up to 10 years, a fine not to exceed $250,000, a supervised release term of up to three years, a mandatory special assessment of $100, and forfeiture of firearms. (*Id*. at pp. 11-12). He stated that he understood these possible consequences of his guilty plea. (*Id*. at p. 12). Tunstall agreed that he and his attorney had talked about how the sentencing guidelines might affect his case. (*Id*. at p. 14). Tunstall testified that he understood that the sentence imposed by the Court might be different from any estimate his lawyer or anybody else might have given him and that, after his guideline range had been determined, the Court had the authority to impose a sentence that was more severe or less severe that that called for by the sentencing guidelines. (*Id*.). Tunstall testified that he understood that, if the Court imposed a sentence more severe than he expected or if the Court did not accept the sentencing recommendations in the plea agreement, he would still be bound by his plea and, if he did not like the sentence imposed by the Court, he would not be able to withdraw his guilty plea. (*Id*. at pp. 14-15).

The Court advised Tunstall that, pursuant to his plea agreement, he was waiving his right to appeal his conviction and sentence by filing a direct appeal or a collateral appeal with limited exceptions. (*Id*. at p. 15). The Court further advised Tunstall that

those exceptions were that he could appeal any punishment in excess of the statutory maximum, any punishment constituting an upward departure of the guideline range, and any claim of ineffective of assistance of counsel. (*Id*.). Tunstall affirmed that he understood this. (*Id*.).

The Court reviewed the elements of each count to which Tunstall was pleading guilty as set forth in the factual resume and Tunstall testified that he understood the elements of those offenses. (*Id*. at pp. 18-19). He also admitted that he, in fact, committed the acts and did the things set forth in the statement of offense conduct. (*Id*. at p. 19).

After questioning Tunstall and observing his demeanor, the Court found that he was fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea, and that his plea of guilty was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses. (*Id*. at p. 21). The guilty plea was accepted, and Tunstall was found guilty. (*Id*.). On June 28, 2018, Tunstall was sentenced to 100 months of imprisonment, with six years' supervised release on count four- and three-years' supervised release on count six. (Doc. 40).

On May 20, 2019, Tunstall filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 45). Tunstall's sole allegation in his motion to vacate is that his retained counsel provided ineffective assistance of counsel. Specifically, he alleges that his attorney failed to advise him properly regarding his sentencing exposure for the offenses to which he pled guilty and, therefore, his plea was not knowing and voluntary. (*Id*. at pp. 5-6). Tunstall also alleges

that his counsel was ineffective because he told Tunstall he would challenge the enhancements, if any, in the PSR, but instead, his attorney withdrew his objection to the four-level enhancement for possession of a controlled substance in connection with another felony. (*Id*. at p. 7). Tunstall alleges that, if he had been properly advised by counsel, he would not have entered a guilty plea. (*Id*. at p. 11). On September 10, 2019, Tunstall filed a motion for leave to file supplemental pleadings, which was granted by the Court. (Docs. 52, 62). In his supplemental pleading, Tunstall alleges that his attorney was also ineffective because he directed his attorney to file a notice of appeal following his sentencing, but counsel failed to do so, and because his counsel failed to object to the four-level enhancement for possession of a controlled substance in connection with another felony and the two-level enhancement for reckless endangerment that the Court found were applicable. (Doc. 52 at pp. 1-3). Tunstall also asserted a *Rehaif* claim, arguing that he did not know that "he fell into one of the categories of persons to whom the offense applies." (*Id*. at p. 4). On May 18, 2020, Tunstall filed a motion to file supplemental pleadings, which was granted by the Court, in which he reasserts his ineffectiveness of counsel claim based on his counsel's alleged failure to challenge the "miscalculation" of his criminal history under the sentencing guidelines and elaborated on his request for relief pursuant to *Rehaif*. (Docs. 61, 63).

## II. <u>CONCLUSIONS OF LAW</u>

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence,

or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The sentence in this case was entered after a plea of guilty. "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). This waiver includes claims of ineffective assistance of counsel that do not implicate the decision to plead guilty. *Id.; see also Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (holding that the defendant's "guilty plea was voluntary and knowingly made" and, therefore, he could not "attack the ineffectiveness of his counsel in any respects other than as the alleged ineffectiveness bears upon counsel's faulty advice that coerced a guilty plea").

## A. <u>Ineffective Assistance of Counsel</u>

Tunstall claims that constitutionally ineffective assistance of counsel during the guilty plea and sentencing stage entitles him to the relief afforded by 28 U.S.C. § 2255. To establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Jones v. United States,* 478 F. App'x 536, 539-540 (11th Cir. 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was

deficient; and (2) the deficient performance prejudiced his defense.").[1]  "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that she was prejudiced by that performance." *Demar v. United States,* 228 F. App'x 940, 950 (11th Cir. 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926 (2002).[2]

> The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every available nonfrivolous defense.

> With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means v. Sec'y, Dep't of Corr.,* 433 F. App'x 852, 855 (11th Cir. 2011) (internal quotation marks and citations omitted); *see also Pair v. Cummins,* 373 F. App'x 979, 981(11th Cir. 2010) ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below

---

[1] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[2] It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley,* 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022 (2002).

an objective standard of reasonableness."). "Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred." *Pair*, 373 F. App'x at 982. "The court must indulge a strong presumption that the attorney's conduct was objectively reasonable." *Id.* Indeed, to satisfy the first prong, "the petitioner must establish that no competent counsel would have taken the action that his counsel did take[.]" *Hall v. Thomas,* 611 F.3d 1259, 1290 (11th Cir. 2010) (quotation marks and citation omitted).

The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). The Eleventh Circuit has held that "'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, as in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.'" *Carter v. United States,* 288 F. App'x 648, 649 (11th Cir. 2008) (quoting *Wofford v. Wainwright,* 748 F.2d 1505, 1508 (11th Cir. 1984)). With regard to the prejudice prong, the *Hill* Court, recognizing the fundamental interest in the finality of guilty pleas identified in *United States v. Timmreck*, 441 U.S. 780, 784 (1979), held that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 58-59.

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, "the cases in which habeas petitioners can properly prevail on the

ground of ineffective assistance of counsel are few and far between." *Johnson,* 256 F.3d at 1176 (citation omitted); *see also Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) ("Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." (citations omitted)), *cert. denied,* 531 U.S. 1204 (2001). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied*, 527 U.S. 1008 (1999); *see also Adamson v. United States,* 288 F. App'x 591, 594 (11th Cir. 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

### 1. Improper Advice Regarding Sentencing Claim:

Tunstall claims in his § 2255 petition that his attorney's failure to advise him properly regarding his sentencing exposure for the offenses to which he pled guilty constituted constitutionally deficient performance because, if he had been properly advised by counsel, he would not have entered a guilty plea. (Doc. 45 at pp. 5-6). To prevail on the prejudice prong, a petitioner "must demonstrate a ***reasonable probability*** that he or she would have gone to trial rather than enter the plea, but for counsel's errors." *Frazier v. United States*, Case No.: 5:15-cv-08012-RDP, 2017 WL 1364976, at *4 (N.D. Ala. 2017) (citing *Lafler v. Cooper*, 566 U.S. 156, 163 (2012)).

"[T]he petitioner's decision to reject the plea would have to be 'rational under the circumstances.'" *Id*. (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372)). Any prejudice potentially arising from "uncorrected 'significant misleading statements of counsel' related to the length of a potential sentence that prompt a defendant to plead guilty," can be offset by statements made by the Court during the plea colloquy. *See id.* at *4-5.

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). At the commencement of the plea colloquy, Tunstall was placed under oath. The foregoing review of the proceedings demonstrates that Tunstall was fully informed of the nature of the charges against him and the consequences of a guilty plea to those charges and that he voluntarily pled guilty. He testified that he had read the factual resume, that the statements therein were true, and that he was pleading guilty because he was guilty. He further testified that he was not pleading guilty due to any promises or assurances made by his counsel. He was advised by the Court of the possible sentencing range and that the Court was not bound by his attorney's nor the Government's recommendations. Tunstall testified that he understood this. Under these circumstances, Tunstall simply cannot demonstrate that he was prejudiced by any misstatements his attorney may have made concerning his sentencing exposure. The Court specifically advised him of the maximum sentence he could receive and told him that his sentence could be more severe than what he had been told by his counsel or anyone else during his plea colloquy, and Tunstall stated that he understood and wanted to plead guilty. *See, e.g., Reed v. United States*, 792 F. App'x 676, 677 (11th Cir. 2019) (finding in favor of

Respondent when Petitioner's arguments were refuted by his sworn statements at plea colloquy); *Gordon v. United States,* Crim. A. No. 15-00055-WS-N, 2018 WL 6006964, at * 5 (S.D. Ala. 2018) (no prejudice shown when alleged misstatements by counsel were corrected by Court during plea colloquy); see also *Frazier*, 2017 WL 1364976, at *6-7 (petitioner could not prevail on ineffectiveness of counsel claim when he swore at the plea colloquy that he was not induced by any promises or assurances, that he understood that the sentence imposed might be different from any estimate made by his counsel, and that he was pleading guilty because he was guilty); *Roux v. United States,* Nos. 2:07-cv-FtM-29SPC, etc., 2008 WL 2445794, at *6 (M.D. Fla. 2008) (attorney was not ineffective for alleged omissions concerning the effect of a guilty plea when the Court covered those topics during the plea colloquy).

### 2. Failure to Object to Enhancements and Criminal History Calculation:

Tunstall alleges that his counsel failed to challenge the "miscalculation" of his criminal history under the sentencing guidelines. (Doc. 61 at p. 3). Specifically, he alleges that his counsel was ineffective because he told Tunstall that he would challenge the enhancements, if any, in the PSR, but instead, his attorney withdrew his objection to the four-level enhancement for possession of a controlled substance in connection with another felony and failed to object to the two-level enhancement for reckless conduct. (Doc. 45 at p. 7; Doc. 52 at pp. 1-3). The facts of this case, however, belie Tunstall's argument.

Prior to Tunstall's sentencing, an officer with the U.S. Probation Office prepared a draft Presentence Investigation Report ("PSI") calculating Tunstall's sentencing range under the Guidelines. (Doc. 29). The draft PSI began by applying a base

offense level of 20 pursuant to § 2K2.1(a)(4)(A), which applies if a defendant possessed a semiautomatic firearm capable of accepting a large capacity magazine and the defendant committed the offense after obtaining a felony drug conviction. (*Id.* at p. 8). The Probation Office recommended three enhancements: (1) a two-level enhancement under § 2K2.1(b)(4)(A) because the offense involved a stolen firearm; (2) a four-level enhancement under § 2K2.1(b)(6)(B) because Tunstall possessed a firearm in connection with another felony offense; and (3) a two-level enhancement under § 3C1.2 for recklessly creating a substantial risk of death or serious bodily injury to another person while fleeing from law enforcement. (*Id.* at pp. 8-9). Factoring in a three-level reduction for acceptance of responsibility under § 3E1.1, these calculations yielded a total base offense level of 25 in Tunstall's case. (*Id.* at p. 9). Tallying his prior convictions, the draft PSI assigned Tunstall a criminal history score of 11, thereby placing him in criminal history category V. (*Id.* at p. 13). Applying a base offense level of 25 and a criminal history category of V, the draft PSI calculated a Guidelines range of 100-120 months. (*Id.* at p. 17).

Tunstall, **_through his counsel_**, made two objections to the Probation Office's calculations. (Doc. 34). First, Tunstall objected to the inclusion of the four-level enhancement under § 2K2.1(b)(6)(B), asserting that he did not possess the firearm recovered by the police either in connection with or to facilitate a felony. (*Id.* at p. 1). Specifically, Tunstall argued that the amount of marijuana the police found in his possession along with the stolen firearm would be a non-felony, "personal use" amount if he did not already have a prior "personal use conviction" for marijuana possession. (*Id.*). Second, Tunstall objected to the two-level enhancement for reckless

endangerment under § 3C1.2. Although Tunstall admitted that he attempted to flee from the police, he claimed that his high-speed chases did not create a substantial risk of death or serious bodily injury because nobody was injured, and he was not charged with reckless driving or reckless endangerment. (*Id.* at p. 2).

The Probation Office disagreed with both of Tunstall's objections and issued a final PSI containing the same calculations set forth in the draft PSI. (Docs. 36, 37). As for the four-level enhancement, the Probation Office noted that Tunstall had a prior conviction for marijuana possession, which renders subsequent instances of simple possession felony offenses under Alabama state law. (Doc. 37 at p. 1). Thus, Tunstall's conduct qualified for purposes of the four-level sentencing enhancement. (*Id*.). With respect to the two-level enhancement, the Probation Office emphasized that, in fleeing from the police, Tunstall ran three red lights and created a substantial danger to other drivers on U.S. Highway 98. (*Id*.). The United States notified the Court that it did not object to the Probation Office's calculations in the PSI. (Doc. 32).

During the sentencing hearing on June 28, 2018, the United States presented evidence to bolster the applicability of both enhancements to which Tunstall had raised objections. (Doc. 44). The United States called Officer Oliver, who pursued Tunstall during his March 2017 high-speed chase, to testify in support of the reckless endangerment enhancement. Officer Oliver testified that Tunstall reached speeds of nearly 80 miles per hour as he zipped through densely populated, residential areas in Daphne. (*Id.* at pp. 5-8). After cross-examining Officer Oliver, Tunstall's attorney argued against this enhancement, reiterating the position that Tunstall was not charged with

reckless driving or reckless endangerment. (*Id.* at p. 10). The Court rejected this

argument, stating,

> THE COURT: Yeah. Well, he doesn't have to be charged or
> convicted of reckless driving to meet the requirements under
> the guidelines. This is not even close. There's no question
> that what he did recklessly endangered property and lives of
> others. And given the facts as I've heard them and taking
> those facts to be true, the enhancement applies in this case.
> The objection is overruled and the two-level enhancement
> will apply.

(*Id.*). Thus, the record establishes that Tunstall's attorney did, in fact, object to the two-

level enhancement.

As for the four-level enhancement for possessing a firearm in connection with

another felony, the United States called Officer Lewis, who found the marijuana and

the stolen firearm in the vicinity of Tunstall's wrecked car in October 2015. Officer Lewis

also reviewed the results of search warrants executed on cell phones recovered from

Tunstall at the time of his arrest. (*Id.* at pp. 11-12). Officer Lewis testified at length about

numerous text messages that Tunstall had sent and received in 2016 and 2017 relating

to the distribution of various narcotics, including crack and powder cocaine, crystal

meth, marijuana, and prescription pills. (*Id.* at pp. 12-25). During Officer Lewis's

testimony, the Court called counsel to the bench, and, after an off-the-record discussion

with the Court, Tunstall's attorney stated that Tunstall would waive his objection to

the four-level enhancement. (*Id.* at p. 25). The Court confirmed the withdrawal, stating

as follows: "Based on the information presented, it's my understanding that Mr. Tunstall

will withdraw the objection to the four-level enhancement for possession in connection

with another felony." (*Id.*). The Court continued,

> Because of your objections, you put the government to the task of having to prove its point about the enhancement, and we just went through a litany of phone calls and evidence that indicate that you have been extensively involved in the drug distribution business. And, you know, there's no question in my mind that that's what you've been doing for a long time and it's been a course of conduct for a long time that's brought you before a number of state courts and this Court.

(*Id.* at p. 29).

Finding that the PSI's calculations were correct, the Court determined that the Guidelines range was 100-120 months.  (*Id.* at pp. 27). The United States recommended that the Court impose a sentence at the low end of the Guidelines range, and the Court accepted the recommendation, sentencing Tunstall to a 100-month sentence.  (*Id.* at pp. 28, 30). Consistent with *United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006), the Court also stated that it would have imposed a 100-month sentence under the factors set forth in 18 U.S.C. § 3553(a), "regardless of [its] rulings on the objections that have been made in this case to the sentencing guidelines."  (*Id.* at p. 31). On July 5, 2018, the Court entered a final judgment that confirmed Tunstall's 100-month sentence. (Doc. 40).  Tunstall did not appeal from that judgment.

Although it is extremely doubtful that the Court would have sustained any objection to the application of the four-level enhancement under the facts of this case or, for that matter, that a valid argument could be made that counsel's withdrawal of the objection fell below "an objective standard of reasonableness" when instead it appeared quite reasonable, the Court need not address those issues. Here, Tunstall simply cannot meet the prejudice prong. First, "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client." *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir.

1992). Moreover, Tunstall cannot show any prejudice suffered by waiver of the objection because the Court clearly stated that it would have imposed a 100-month sentence under the factors set forth in 18 U.S.C. § 3553(a), "regardless of [its] rulings on the objections that have been made in this case to the sentencing guidelines." (Doc. 44 at p. 31). Accordingly, there is not a reasonable probability that the Court would have imposed a different sentence even if counsel had continued to assert the objection to the four-level enhancement. *See United States v. Anderson*, 816 F. App'x 318, 323 (11th Cir. 2020).

### 3. Failure to File Appeal Claim:

On September 10, 2019, Tunstall filed a motion for leave to file supplemental pleadings, which was granted by the Court. (Docs. 52, 62). In his supplemental pleading, Tunstall alleges that, pursuant to *Roe v. Flores-Ortega,* 528 U.S. 470, 484 (2000), his attorney was also ineffective because he did not consult with him regarding the pros and cons of filing an appeal and because he directed his attorney to file a notice of appeal following his sentencing, but counsel failed to do so. Tunstall's argument of ineffectiveness based on these allegations fails because the claim is time-barred.

A prisoner generally cannot file a collateral challenge to his sentence more than one year after the date on which the judgment of conviction in his case became final. 28 U.S.C. § 2255(f)(1). Tunstall's judgment of conviction was entered on the criminal docket on July 5, 2018. (Doc. 40). The judgment became final 14 days later - *i.e.*, on July 19, 2018 - when the time for Tunstall to file a direct appeal expired. *See* Fed. R. App. P. 4(b)(1)(A)(i), (6); *Akins v. United States*, 204 F.3d 1086, 1089 n.1 (11th Cir.

2000) ("A conviction ordinarily becomes final when the opportunity for direct appeal of the judgment of conviction has been exhausted."). Because Tunstall did not file a direct appeal of his conviction, none of the usual exceptions to the one-year time bar apply. *See Ramirez v. United States*, 146 F. App'x 325, 326 (11th Cir. 2005) (*per curiam*). Thus, Tunstall's collateral challenge to his sentence was due to be filed on or before July 19, 2019. Tunstall did not file his claim of ineffective assistance based on his counsel's failure to file an appeal until almost two months after the deadline. He has offered no reason for his failure to assert this claim in his initial thorough motion. (*See* Doc. 52).

To consider the merits of Tunstall's untimely claim under *Flores-Ortega*, the Court would have to find, pursuant to Federal Rule of Civil Procedure 15(c), that the claim "relates back" to the date of filing of Tunstall's initial motion. *See Davenport v. United States*, 217 F.3d 1341, 1343-46 (11th Cir. 2000). The Eleventh Circuit has emphasized that Rule 15(c) is narrow; it is not meant to permit amended pleadings that "add an entirely new claim based on a different set of facts." *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003) (*per curiam*). In the § 2255 context, "to relate back, an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial or sentencing proceeding." *Id.* That is, the untimely claim must arise from the "same set of facts" as the timely filed claim, rather than from conduct or occurrences that are separate in "both time and type." *Davenport*, 217 F.3d at 1346.

Tunstall cannot make this showing here. His initial motion alleges errors relating to his counsel's advice concerning the length of his sentence prior to his guilty plea and

sentencing hearings and withdrawal of an objection during his sentencing hearing. His claim first asserted in September, under *Flores-Ortega,* asserts entirely separate errors: failure to consult regarding a potential appeal of the sentence imposed and failure to file a notice of appeal as allegedly requested. It is well-settled in the Eleventh Circuit that new claims alleging different trial errors are not part of the same course of conduct and do not relate back to the date of a timely filed § 2255 motion. *See, e.g.*, *Farris*, 333 F.3d at 1215–16 (untimely claim relating to use of invalid conviction for purposes of sentencing enhancement did not relate back to timely claim of ineffective assistance of counsel for failure to advise regarding sentencing exposure).

Tunstall cannot legitimately revive this time-barred claim by alleging that he is asserting a right that "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Tunstall specifically relies on the Supreme Court's decision in *Flores-Ortega*, in which the Court held that a defendant is presumed to have been prejudiced where he can show that he would have timely appealed but for counsel's deficient failure to consult with him about an appeal. 528 U.S. at 484. That decision is nearly twenty years old, however. Because it does not confer a right that has been newly recognized, *Flores-Ortega* does not support a valid collateral attack under § 2255(f)(3). Tunstall's time-barred claims also cannot be resuscitated by the Supreme Court's more recent decision in *Garza v. Idaho*, 139 S. Ct. 738 (2019), which by its own plain terms merely is a straightforward application of the rule in *Flores-Ortega*. *See id.* at 742.

**B. _Rehaif_ Claim**

Tunstall also asserted a _Rehaif_ claim as to his felon in possession conviction, arguing that the Government did not prove that he knew that "he fell into one of the categories of persons to whom the offense applies." (_Id_. at p. 4). This claim also fails to state a claim for 2255 relief. In _Rehaif_, the Supreme Court held that the _mens rea_ element in 18 U.S.C. § 922(g) applies to a defendant's prohibited status, not just to a defendant's possession of a firearm. 139 S. Ct. at 2194. The _Rehaif_ Court held that "[t]o convict a defendant, the Government . . . must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." _Id._ Although the Court adopted a new standard with respect to the status element for purposes of § 922(g), its ruling was narrow in scope. First, the Court clarified that it "express[ed] no view . . . about what precisely the Government must prove to establish a defendant's knowledge of status in respect to other § 922(g) provisions not at issue here." _Id._ at 2200. Second, the Court remanded the defendant's case for a determination of whether the error in that case was harmless. _Id._ Thus, the _Rehaif_ Court recognized that its decision would not mandate a different outcome in every § 922(g) prosecution that had preceded that decision.

In this case, any claim Tunstall may have had to relief under _Rehaif_ is procedurally defaulted. The procedural default rule provides that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." _Massaro v. United States_, 538 U.S. 500, 504 (2003); see _Carlyle v. United States,_ 836 F. App'x 780, 783 (11th Cir. 2020) (applying this rule to a § 922(g) conviction pursuant to a guilty plea). As the Eleventh Circuit has recognized, "[u]nder

the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011); *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (*per curiam*). Tunstall did not object to the elements of the offense in the district court and declined to file a direct appeal. (*See* Doc. 49 at pp. 18-19 and Docket Sheet). Given that Tunstall did not raise an objection to the elements of his § 922(g)(1) charge in the first instance to this Court or to the Eleventh Circuit, his claim is procedurally defaulted. *See McKay*, 657 F.3d at 1196 ("[I]t is beyond dispute that McKay procedurally defaulted his claim that he was erroneously sentenced as a career offender. McKay failed to advance this claim on direct appeal—indeed, a direct appeal was not even filed.").

As the Eleventh Circuit has explained, two exceptions to the procedural default rule exist: "(1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence." *Id.* Under the first exception, the defendant must establish both cause for not raising the claim of error on direct appeal and prejudice flowing from the error. *Lynn*, 365 F.3d at 1234. To satisfy the second exception, the defendant must make a showing that he is actually innocent of the offense. *Id.* at 1234-35. Tunstall's supplemental pleading rests on this second ground, claiming that he is actually innocent because he did not know "that he fell into one of the categories of persons to whom the offense applies." (Doc. 52 at p. 4).

Tunstall satisfies neither exception to the procedural default rule. The first exception does not apply because Tunstall cannot meet the prejudice prong. While, as

the Eleventh circuit noted in *Carlyle,* "[t]he novelty of a claim may be cause to excuse a procedural default," this Court need not determine the cause issue because Tunstall cannot show actual prejudice. To show actual prejudice, the petitioner "must show that the error worked to his 'actual and substantial disadvantage,' not merely 'the possibility of prejudice.'" *Carlyle*, 836 F. App'x at 783 (quoting *United States v. Bane*, 948 F.3d 1290, 1297 (11th Cir. 2020)). Tunstall simply cannot establish that there is a reasonable probability that any asserted error made a difference in the result of his case. *See United States v. Rodriguez*, 398 F.3d 1291, 1300 (11th Cir. 2005) (applying a prejudice standard in the context of plain error review). "The Government's obligation to prove knowledge is not 'burdensome,' and it may be inferred from circumstantial evidence. *Carlyle*, 836 F. App'x at 783 (citing *Rehaif*, 139 S. Ct. at 2198). Here, the record contains sufficient evidence to establish knowledge. As this Court recognized at sentencing, Tunstall was a recidivist felon with a lengthy criminal history. (Doc. 44 at pp. 28-29). Tunstall admitted as part of the factual resume attached to his plea agreement that he had three prior drug-related felony convictions. (Doc. 28 at pp. 17-18). Details concerning his prior felony convictions were also contained in the Final PSI, and he did not dispute those convictions. (Doc. 36). For these reasons, the Court finds that, even if Tunstall had been aware of the Government's burden to prove he had knowledge of his status, he would not have changed his decision to plead guilty considering the fact the record amply supports the conclusion that the Government would have been able to make the required showing. *See Carlyle*, 836 F. App'x at 783. Therefore, Tunstall cannot meet the actual prejudice standard. For this same reason, Tunstall cannot prove that he was actually innocent of the charge.

Tunstall's *Rehaif* claim also could not survive even if alleged as an ineffective assistance of counsel claim. Tunstall could not show that his attorney's alleged failure to challenge the elements of a § 922(g) offense amounted to deficient performance because, as the Eleventh Circuit repeatedly has held, an attorney need not anticipate changes in the law to provide effective representation. *Hernandez v. United States*, 778 F.3d 1230, 1232 (11th Cir. 2015) (noting that failure to anticipate a change in the law does not mean that counsel was constitutionally deficient); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) ("To be effective within the bounds set by *Strickland*, an attorney need not anticipate changes in the law."); *Funchess v. Wainwright*, 772 F.2d 683, 691 (11th Cir. 1985) ("The failure of counsel to anticipate that an otherwise valid jury instruction would later be deemed improper by the state judiciary does not constitute ineffective assistance of counsel."). The "wall of binding precedent" on this matter "shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (Carnes, J., concurring in the denial of rehearing *en banc*).

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial

of a constitutional right." 28 U.S.C. § 2243(c)(2). The instant habeas petition is being denied partially on the merits of the alleged constitutional claim, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). In this case, a reasonable jurist could not conclude that this Court is in error for denying Tunstall's motion to vacate, nor could a reasonable jurist conclude that Tunstall should be allowed to proceed further with respect to his constitutional claim. As discussed above, one of Tunstall's claims was untimely and one was procedurally defaulted. Where a habeas petition is being denied on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Under the circumstances, a reasonable jurist could not conclude that this Court is in error in invoking these procedural bars with respect to his claims. *See Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, Tunstall is not entitled to a certificate of appealability.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-00165-WS-C, Doc. 14 (order from Eleventh Circuit denying petitioner a certificate of appealability in a case in which this exact procedure was outlined in the report and recommendation); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

## CONCLUSION

The undersigned Magistrate Judge **RECOMMENDS** that Tunstall's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 45) be **DENIED** for the reasons stated above. Tunstall is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in

accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 2nd day February, 2022.

 s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**